2010 Ark. App. 279

**WINROCK GRASS FARM, INC., Appellant**

v.

**AFFILIATED REAL ESTATE APPRAISERS OF ARKANSAS, INC.; Tom Ferstl; and Metropolitan National Bank, Appellees.**

**No. CA 09–857.**

Court of Appeals of Arkansas.

March 31, 2010.

Rehearing Denied May 5, 2010.

James Henry Penick, III, Eichenbaum, Liles & Heister, P.A., Little Rock, for appellant.

Peter Gray Kumpe, Clayborne S. Stone, Andrew King, Williams & Anderson PLC, John E. Tull III, Emmett Bowers Chiles IV, Benecia B. Moore, Quattlebaum, Grooms, Tull & Burrow PLLC, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

During a 2004 foreclosure proceeding, appellee, Metropolitan National Bank, hired its fellow appellee, Affiliated Real Estate Appraisers of Arkansas, Inc., to appraise property owned by appellant, Winrock Grass Farm, Inc. Four years later, Winrock sued Metropolitan and Affiliated for fraud, interference with a business expectancy, breach of fiduciary duty, and negligence in connection with the apprais-

al.[1] On motions by Metropolitan and Affiliated, the circuit court dismissed Winrock's complaint, and Winrock appeals from the dismissal. Our decision in this case focuses on a single issue: did prior court proceedings between Winrock and Metropolitan bar Winrock's current complaint, based on the doctrines of res judicata and collateral estoppel? We hold that the complaint was barred, and we affirm the circuit court's dismissal.

## I. Background facts and prior litigation

In the late 1990s, Metropolitan loaned more than $5,000,000 to Winrock's owner, Frank Whitbeck. The loans were secured by mortgages on Winrock's 811–acre grass farm in western Pulaski County. By 2003, the loans were in default with more than $4,000,000 owing. Metropolitan foreclosed, and Winrock consented to the entry of a foreclosure decree on August 17, 2004. The decree gave Metropolitan judgment for the past-due loan amounts and ordered the sale of the grass-farm property in satisfaction of the judgments.

Not long after the foreclosure decree was entered, Metropolitan hired Affiliated to appraise the grass-farm property. Affiliated noted that 573 of the 811 acres were located in a flood plain and valued the land at $2,825,000, or approximately $3483 per acre, relying on comparable sales of nearby property ranging from $2500 to $7885 per acre. The appraisal stated that it was prepared solely for Metropolitan's use and that no third parties were authorized to rely on it without Affiliated's written consent.

Within days after Affiliated prepared the appraisal, Winrock filed Chapter 11

bankruptcy. The bankruptcy court issued an automatic stay, which postponed the foreclosure sale indefinitely. During the bankruptcy proceeding, Frank Whitbeck proposed satisfying the Metropolitan debt by selling all or part of the grass-farm property while paying Metropolitan a minimum of $50,000 per month from the grass-farm operation. However, Metropolitan did not feel adequately protected by Whitbeck's plan, given the grass-farm's poor earnings reports and the $2,825,000 land appraisal, which was far less than the $4,000,000–plus debt. Consequently, Metropolitan filed a motion in bankruptcy for relief from the automatic stay and permission to proceed with foreclosure in state court.

The bankruptcy court conducted a hearing on Metropolitan's motion, and Metropolitan entered the grass-farm appraisal into evidence through witness B.A. McIntosh. McIntosh testified that he prepared the appraisal for Affiliated and that, in determining the property's value, he researched comparable sales in the area, considered the amount of acreage in the flood plain, and considered the amount of acreage along roadway frontage. Winrock thoroughly cross-examined McIntosh regarding the comparable sales but did not produce its own appraiser to testify at the hearing. Whitbeck would later say that his appraiser was too ill to attend.

However, Whitbeck testified to his assessment of the grass-farm's value, citing land sales in the area that brought between $14,892 and $30,000 per acre. Whitbeck said that he contracted with real-estate broker Carolyn Russell to sell all or part of the grass-farm property for $15,000 per acre. Russell testified that she set the

---

1. Winrock also named Affiliated's owner, Tom Ferstl, as a defendant. For the sake of con-

venience, we will refer to these parties collectively as "Affiliated."

$15,000–per–acre price based on comparable sales in the area, although she did not know of any sales involving tracts as large as the grass farm. She stated that it could take two to five years to sell the 811 acres.

At the close of the hearing, the bankruptcy court found no support for the price of $15,000 per acre on the entire property, which left Affiliated's appraisal as "the only other [4]competent testimony." Based on the appraisal and other testimony, the court found that Metropolitan was "under water" on the debt and not adequately protected. The court therefore lifted the automatic stay, freeing Metropolitan to conduct a foreclosure sale in state court. The grass-farm property was sold in foreclosure on June 29, 2005, for $4,550,000. The purchasers sold the property less than a year later for $11,500,000.

After the initial sale, Winrock filed a counterclaim against Metropolitan in the state-court foreclosure action, which was still pending for some purposes. Among the numerous allegations in the counterclaim were that Metropolitan committed breach of contract, breach of fiduciary duty, negligence, and constructive fraud by "soliciting a bogus below-market appraisal on the Winrock property in 2004" and by "wrongfully forcing Winrock ... out of bankruptcy protection, and into an irregular foreclosure proceeding." Metropolitan moved for summary judgment on the counterclaim, arguing that the bankruptcy judge's ruling that the 2004 appraisal was competent evidence barred relitigation of the issue. The court allowed Winrock to conduct discovery before responding to the motion, and in doing so, Winrock located a 2005 Affiliated appraisal that valued the grass-farm property, along with an additional 154 acres, at $14,000,000. The appraisal utilized several comparable sales that were higher in value than those employed in the 2004 appraisal. Winrock attached the 2005 appraisal as an exhibit to its response to Metropolitan's motion for summary judgment and argued at the motion hearing that Affiliated's 2004 appraisal "violated the most basic premise of appraisal standards" and represented a "bogus," "false," and "negligen[t]" attempt to force the grass-farm[5] property out of bankruptcy. The court granted Metropolitan's motion for summary judgment and denied Winrock's motion to file a third-party complaint against Affiliated. Winrock appealed that order, once the foreclosure action was finalized, but the appeal was ultimately rejected by our supreme court on October 23, 2008, based on a defect in the order extending time to file the record on appeal. The foreclosure action and the counterclaim were thus concluded.

## II. The current litigation

On November 6, 2008, Winrock filed a new complaint against Metropolitan and Affiliated based on the 2004 appraisal. The complaint charged Affiliated with fraud, interference with a business expectancy, breach of fiduciary duty, and negligence based on Affiliated's 1) violation of industry and government standards in preparing the 2004 appraisal; 2) use of the 2004 appraisal in bankruptcy court; and 3) failure to disclose or utilize in the 2004 appraisal comparable sales of $14,892 to $28,350 per acre. Winrock attached to the complaint a portion of Affiliated's 2005 appraisal that used those high-value comparables. Winrock's claim against Metropolitan was based on Metropolitan's alleged conspiracy with Affiliated and its procurement, supervision, and ratification of the 2004 appraisal. Winrock characterized Metropolitan's potential liability as arising

from respondeat superior or a principal-agency relationship with Affiliated.

Metropolitan moved to dismiss the complaint, arguing that it was barred by res judicata as the result of the summary judgment on Winrock's counterclaim in the foreclosure action. [6Affiliated adopted Metropolitan's motion and additionally asserted the defenses of testimonial immunity and failure to state facts upon which relief could be granted. The circuit court granted Metropolitan's and Affiliated's motions to dismiss with prejudice, and Winrock filed this appeal.

### III. Standard of review

We generally review a circuit court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff. *Statewide Outdoor Adver., LLC v. Town of Avoca*, 104 Ark. App. 10, 289 S.W.3d 111 (2008). On those occasions where the circuit court is presented with documents outside the pleadings, as was done here, we treat the case as an appeal from a summary judgment, *see Bayird v. Floyd*, 2009 Ark. 455, 344 S.W.3d 80, and view the evidence in the light most favorable to the party opposing the motion. *Watkins v. S. Farm Bureau Cas. Ins. Co.*, 2009 Ark. App. 693, 370 S.W.3d 848. However, when the issues on appeal do not involve factual questions but rather the application of a legal doctrine such as res judicata, we simply determine whether the appellees were entitled to judgment as a matter of law. *Linder v. Ark. Midstream Gas Servs. Corp.*, 2010 Ark. 117, 362 S.W.3d 889; *Ruth R. Remmel Revocable Trust v. Regions Fin. Corp.*, 369 Ark. 392, 255 S.W.3d 453 (2007).

### IV. Res judicata/claim preclusion

■ The claim-preclusion aspect of res judicata bars relitigation of a claim in a

subsequent suit when five factors are present: 1) the first suit resulted in a final judgment on the merits; [7 2) the first suit was based upon proper jurisdiction; 3) the first suit was fully contested in good faith; 4) both suits involve the same claim or cause of action; 5) both suits involve the same parties or their privies. *Powell v. Lane*, 375 Ark. 178, 289 S.W.3d 440 (2008). Res judicata bars not only relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. *Linder*, 2010 Ark. 117, 362 S.W.3d 889. When a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* The key question regarding the application of res judicata is whether the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the claim in question. *See id.*

■ We conclude that the five elements of claim preclusion are present here. Winrock's counterclaim in foreclosure, which challenged the 2004 appraisal, was decided by summary judgment. A summary judgment is a final adjudication on the merits. *See Nat'l Bank of Commerce v. Dow Chem. Co.*, 338 Ark. 752, 1 S.W.3d 443 (1999). The circuit court in the foreclosure action had jurisdiction to hear the counterclaim and both Metropolitan and Winrock were parties to that action. Furthermore, Winrock fully contested Metropolitan's motion for summary judgment as shown by its conducting discovery, filing a highly detailed response with numerous exhibits, and vigorously defending its counterclaim at the hearing on the motion. Finally, the previous counterclaim and the present lawsuit both involve the same claims or causes of action. Both suits alleged that Metropolitan perpetrat-

ed a false, under-valued appraisal in 2004 and used it to divest Winrock of bankruptcy protection.

Winrock argues that the *bankruptcy court's* acceptance of the 2004 appraisal had no preclusive effect. However, the "first suit" for res judicata purposes in this case is Winrock's counterclaim in the foreclosure action and not the bankruptcy proceeding. Winrock also argues that the counterclaim in the foreclosure action and the current lawsuit do not involve the same causes of action because the facts were different in both. In particular, Winrock contends that it did not discover Affiliated's use of the higher comparables in the 2005 appraisal until after it had filed its counterclaim. However, Winrock's discovery of the 2005 appraisal was simply an acquisition of additional evidence to support an existing claim. New evidence or research will not prevent the application of res judicata. *See generally Nat'l Bank of Commerce*, 338 Ark. 752, 1 S.W.3d 443. Moreover, Winrock learned of the 2005 appraisal and the unused comparables during a deposition taken *before* the summary-judgment hearing. Winrock even attached the 2005 appraisal as an exhibit to its response to the motion for summary judgment and cited the appraisal during the motion hearing. It therefore cannot be said that the 2005 appraisal presented new claims and causes of action in the present case.

Based on these circumstances, we conclude that Winrock has had the opportunity to litigate its claims against Metropolitan based on the 2004 appraisal. We therefore affirm the circuit court's dismissal of Winrock's complaint against Metropolitan.

■■ We further conclude that Winrock's claims against Affiliated are likewise barred by res judicata based on Metropoli-

tan's and Affiliated's status as privies. Privity of parties within the meaning of res judicata means a person so identified in interest with another that he represents the same legal right. *Spears v. State Farm Fire & Cas. Ins.*, 291 Ark. 465, 725 S.W.2d 835 (1987). The parties need not be precisely the same for a judgment in one action to bar another, as long as there is a substantial identity and, as in the present case, the same claim is at stake. *Van Curen v. Ark. Prof'l Bail Bondsman Licensing Bd.*, 79 Ark. App. 43, 84 S.W.3d 47 (2002).

■ Here, there is substantial identity between Metropolitan and Affiliated. In its pleadings below, Winrock described Metropolitan and Affiliated as principal and agent or co-conspirators. A principal-agent relationship is sufficient to satisfy the privity requirement for purposes of res judicata. *Jayel Corp. v. Cochran*, 366 Ark. 175, 234 S.W.3d 278 (2006). It is also widely recognized that coconspirators are privies for res judicata purposes where, as here, the alleged conspirator's existence and actions were known to the plaintiff during the prior litigation. *See generally Discon, Inc. v. Nynex Corp.*, 86 F.Supp.2d 154 (W.D.N.Y.2000); *Waldman v. Village of Kiryas Joel*, 39 F.Supp.2d 370 (S.D.N.Y. 1999); *McIver v. Jones*, 209 Ga.App. 670, 434 S.E.2d 504 (1993); *Press Publ., Ltd. v. Matol Botanical Int'l*, 37 P.3d 1121 (Utah 2001). The circuit court was therefore correct in dismissing Winrock's complaint against Affiliated.[2]

V. *Collateral estoppel/issue preclusion*

■ The circuit court would also have been correct in dismissing Winrock's claims against Affiliated based on the doctrine of collateral estoppel, or issue preclusion. Collateral estoppel bars the relitigation of issues of law or fact actually

---

**2.** The circuit court did not rely on res judicata as a basis for dismissing Winrock's complaint

litigated in the first suit, provided the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Watkins,* 2009 Ark. App. 693, 370 S.W.3d 848. The following elements must be present in order to establish collateral estoppel: 1) the issue sought to be precluded must be the same as that involved in the prior litigation; 2) the issue must have been actually litigated; 3) the issue must have been determined by a final and valid judgment; 4) the determination must have been essential to the judgment. *McWhorter v. McWhorter,* 2009 Ark. 458, 344 S.W.3d 64. Unlike res judicata, collateral estoppel does not require mutual identity of parties; it is therefore possible for a stranger to the first decree to assert collateral estoppel as a defense in a subsequent action. *See Taylor v. Hamilton,* 90 Ark. App. 235, 205 S.W.3d 149 (2005).

When we compare the issues in the previous counterclaim with the issues in the present litigation, we see that they are the same. Both of Winrock's pleadings—the counterclaim in the foreclosure action and the complaint in the present case—challenge the legitimacy of the 2004 appraisal, the manner of its preparation, and its use in the bankruptcy proceeding. The previous court, which heard the counterclaim, determined those issues in favor of the appraisal's validity, and that determination was essential to that court's entry of summary judgment. Thus, there is no need to relitigate those issues again. The elements of collateral estoppel have been fulfilled, and the circuit court's dismissal of Winrock's complaint against Affiliated was correct.

### VI. Remaining issues

Our affirmance on the grounds of res judicata and collateral estoppel makes it

---

against Affiliated, but we may affirm a trial court if its ruling was correct for any reason.

---

unnecessary for us to address Winrock's other arguments, including its argument that the circuit court's dismissal should have been granted without prejudice. We note that because we have held that Winrock's complaint was subject to dismissal on legal grounds, rather than on the ground of failure to state a claim, it was proper to end the suit with prejudice. *See Williams v. Ark. Dep't of Corr.,* 362 Ark. 134, 207 S.W.3d 519 (2005).

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.

---

*Weisenbach v. Kirk,* 104 Ark. App. 245, 290 S.W.3d 614 (2009).